UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JOHN A. ARENA and THOMAS ARENA,

     Plaintiffs,

v.

ROBERT W. DRISCOLL, LAINA C. DRISCOLL,   No. 16-cv-11562-DLC
Individually and as Trustees of
QUISSETT PARTNERS NOMINEE TRUST,

     Defendants.

**ORDER RE: PLAINTIFFS' MEMORANDUM FOR THE PROPOSED DISTRIBUTION
OF MONIES HELD IN ESCROW AND RATIONALE (DKT. NO. 95) AND
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, SIMULTANEOUS EXECUTION
ON AND REMITTANCE OF ESCROWED FUNDS (DKT. NO. 96)**

CABELL, U.S.M.J.

## I.   **INTRODUCTION**

Plaintiffs John A. Arena and Thomas Arena sued the defendants
in 2016 seeking a constructive trust and an order declaring them
to have a 50% ownership in certain property then held by the
defendants through the Quissett Partners Nominee Trust.
Defendants Robert W. Driscoll and Laina C. Driscoll, the sole
trustees and beneficiaries of the Quissett Partners Nominee Trust,
now concede that the plaintiffs may be entitled to a 50% interest
in proceeds from the now sold property, but counterclaim that any
such interest is overshadowed by a debt that the state courts of
Pennsylvania have adjudged as being owed by the plaintiffs to the

defendants.    The  issue  before  the  court  is  whether  these
Pennsylvania  judgments,  which  uphold  three  promissory  notes  ("the
notes")  between  the  plaintiffs  and  defendants  totaling  at  least
$708,306.83  (including  accrued  interest),  should  be  applied  to  the
parties'   long-standing   Massachusetts   litigation   and   the
distribution  of  the  property  sale  proceeds.

Following  several  motions  and  rounds  of  briefing,  the  court
asked  the  parties  to  submit  their  proposed  distributions  through
a  submission  akin  to  summary  judgment.   For  the  reasons  set  forth
below,  the  court  finds  the  Pennsylvania  judgments  are  enforceable
and  applicable  to  this  action,  and  that  the  defendants'  proposed
distribution  is  proper.    Therefore,  the  defendants'  Motion  for
Summary  Judgment,  Simultaneous  Execution  on  and  Remittance  of
Escrowed  Funds  (Dkt.  No.  96)  is  ALLOWED.

## II.   <u>BACKGROUND</u>

In  2004,  plaintiffs  John  and  Thomas  Arena  joined  with  the
defendants,  Robert  and  Laina  Driscoll,  to  purchase  a  house  and
three  cottages  ("the  property")  in  Nantucket,  MA.   (Dkt.  No.  98,
p.  3).   The  defendants  estimate  the  total  cost  of  acquiring  the
property  was  $1.45  million.   (*Id.* at  p.  4,  n.4).   To  purchase  the
property,  the  plaintiffs  initially  put  down  $5,000  each  in  mid-
2004.   (Dkt.  No.  95,  p.  4,  ¶  9;  Dkt.  No.  98,  p.  4).

On  January  31,  2005,  the  plaintiffs  gave  $100,000.00  more
($50,000.00  each)  to  the  defendants.   (Dkt.  No.  95,  p.  6,  ¶  26;

Dkt. No. 98, p. 4).  On March 24, 2005, each plaintiff executed a promissory note to defendant Robert Driscoll in the amount of $183,861.00.  (Dkt. No. 95, p. 7, ¶¶ 29-30; Dkt. No. 98-K; Dkt. No. 98-L).  On October 27, 2009, John Arena executed an additional promissory note to Robert Driscoll in the amount of $17,500.00. (Dkt. No. 95, p. 9, ¶ 50; Dkt. No. 98-M).

At present, neither party appears to contest that the down payments and promissory notes were undertaken by the plaintiffs to become partners in purchasing the property.  The promissory notes themselves state that payment of the notes became due "the earlier of i) sale of any properties in which [John or Thomas] Arena has an ownership stake, or ii) September 1, 2005."  (Dkt. No. 98-K; Dkt. No. 98-L).  The plaintiffs' complaint also avers that their combined 50% interest stemmed from "their earnest money contributions, the promissory notes . . . and the words and actions of Defendants Robert and Laina Driscoll."  (Dkt. No. 1, ¶ 23).

On May 25, 2016, after the plaintiffs had allegedly disavowed the promissory notes, the defendants filed a suit in Pennsylvania (where the Driscolls reside) seeking recognition of the validity of the notes.  They invoked a confessed judgment clause[1] in the

---

[1] Confessed judgment clauses "constitute 'written authority of a debtor and a direction by him for the entry of a judgment against him if the obligation set forth in the note is not paid" and basically provide for an expedited method of collecting a judgment based on an unpaid debt. *C.F. Trust, Inc. v. Peterson*, No. 96-1375H, 6 Mass. L. Rptr. 505, at *1 (Mass. Super. Mar. 6, 1997).  Judgments by confession exist as a legal concept in some states, such as Pennsylvania but not Massachusetts, as discussed *infra*.

3

promissory note and subsequently received a judgment holding the promissory notes valid and enforceable. (Dkt. No. 98-A; Dkt. No. 98-B; Dkt. No. 98-C). The plaintiffs challenged the validity of the promissory notes by moving to strike or open the confessed judgments. The Philadelphia Court of Common Pleas allowed this motion, but the Pennsylvania Superior Court, sitting *en banc*, reversed. *See Driscoll v. Arena*, 213 A.3d 253 (2019). Since the plaintiffs did not seek further appellate review, those judgments have become final.

Defendants, in their amended counterclaims, allege that the plaintiffs have still not paid the balance due on these notes, which includes the principal and significant interest. (Dkt. No. 94, p. 11, ¶ 11).[2] The defendants filed an action to collect on the promissory notes in Massachusetts state court. (Dkt. No. 98-H). The state court has since dismissed that action. *See* Judgment of Dismissal, *Driscoll v. Arena*, (Mass. Super. Aug. 16, 2021) (No. 1675CV00016).

After the parties resolved an issue regarding a notice of *lis pendens* placed on the property, the property was sold. *See* (Dkt. No. 91). By agreement of the parties, the court is holding the proceeds of that sale, totaling $1,003,799.11, in escrow. (Dkt. No. 88; Dkt. No. 92).

---

[2] The parties agree that John Arena has since satisfied the judgment against him as to the $17,500 promissory note. (Dkt. No. 103; Dkt. No. 104, p. 2).

The court asked each party to provide a proposed distribution of proceeds in a filing similar to summary judgment. (Dkt. No. 88).  The plaintiffs propose that $360,000.00 be paid to the defendants to reimburse them for family-based capital contributions, $10,000.00 be paid to themselves to reimburse them for their earnest money deposit, and the remaining $633,799.11 be split in half with one half going to the defendants and one half going to the plaintiffs, representing their respective 50% ownership interests in the Property.  (Dkt. No. 95).  The defendants propose that they would concede that the plaintiffs have a 50% ownership interest in the property, conditioned on the court accepting and applying the money due to them under the Pennsylvania judgments. (Dkt. No. 98).  Therefore, the defendants state that the proceeds should be simply split fifty-fifty to represent each party's ownership interest, and then the amounts owed by the plaintiffs be taken out of their half and given to the defendants.  (*Id.*).

III. **DISCUSSION**

   A. ***The Parties' Respective Ownership Interest in the Proceeds***

As a threshold matter, the relief the plaintiffs seek in this action is recognition of a 50% ownership interest in the properties.  (Dkt. No. 95, p. 12).  The defendants presently do not challenge the plaintiffs' right to 50% of the proceeds from

the sale of the property.  (Dkt. No. 98, p. 21) ("[A]ccepting Mr. Driscoll's concession that each of the Arenas are due 25% on the Escrowed Funds . . .").  The attendant evidence of the parties' own understanding of their arrangement supports the notion that the Arenas and the Driscolls intended to become equal partners in their land-purchasing venture.  The court finds no reason to disturb the parties' agreed-to sentiment with respect to the ownership interests, which leaves the issue of the promissory notes the plaintiffs signed in order to join the venture.

### B. Pennsylvania Judgments on Promissory Notes

The defendants suggest that the division of the sale proceeds is just the first part of a more complicated calculus.  Their counterclaim asks the court to recognize and enforce the promissory notes, which the plaintiffs do not contest they signed.  More specifically, the defendants seek this court's recognition of the confessed judgments that they secured in Pennsylvania state court after a separate lengthy legal battle with the plaintiffs.  The history of the Pennsylvania litigation is detailed in *Driscoll v. Arena*, 213 A.3d 253 (2019), but for present purposes, the ultimate outcome can be fairly stated thus: the Pennsylvania state court rejected the plaintiffs' argument that the promissory notes and their confessed judgment clauses are unenforceable.

Despite the Pennsylvania decision, the plaintiffs continue to argue here that the notes are unenforceable by citing to

Massachusetts General Law Chapter 231, Section 13A, which the plaintiffs claim "renders void any judgment obtained in the manner in which Defendant Driscoll secured the ex parte judgments on the promissory notes." (Dkt. No. 95, p. 15). The statute reads, in relevant part,

> Any stipulation in a contract, promissory note or other instrument, or in any memorandum or writing relating thereto, whereby a party thereto agrees to confess judgment in any action which may be brought thereon or authorizes or agrees to authorize another person to confess judgment as aforesaid shall be void and any judgment by confession taken in pursuance of such a stipulation shall be set aside or vacated on motion of the defendant.

M.G.L. ch. 231, § 13A. The plaintiffs' reliance on the statute is misplaced, however, in light of case law from the Massachusetts Supreme Judicial Court ("SJC") holding that the statute does not apply to judgments rendered by courts of another state, and that those judgments are "valid and entitled to full faith and credit." *McDade v. Moynihan*, 115 N.E.2d 372, 375 (Mass. 1953). In *McDade*, a case also about confessed judgments from Pennsylvania, the SJC made clear that one state accepting the judgments of another state is a federal Constitutional imperative. *Id.* ("[The statute] does not empower the courts of this Commonwealth, because of our policy, to refuse full faith and credit according to the Constitution of the United States to the judgments of other States which are valid under the laws of those States."). Where a Massachusetts state court would not reject a Pennsylvania judgment obtained through a

7

confessed judgment clause, neither will this federal court.  *See, e.g., Commercial Union Ins. Co. v. Walbrook Ins. Co.,* 41 F.3d 764, 772 (1st Cir. 1994) (under *Erie* doctrine, federal courts sitting in diversity jurisdiction are generally obligated to apply state law).

### C. Distribution of Proceeds

Having decided that the parties have an equal claim to the escrowed funds and that the promissory notes are enforceable and will be recognized in this action, the remaining issue concerns how a limited set of funds ought to be equitably distributed.  The plaintiffs essentially propose that all parties should receive back the earnest money contributions they initially made, that various loans should be paid back, that the notes should be disregarded, and that the funds be dispersed in the amounts of $163,449.77 to Thomas Arena, $163,449.77 to John Arena, and $676,889.57 to Robert Driscoll.  (Dkt. No. 95, p. 16; Dkt. No. 130).  The defendants essentially propose that the escrowed funds be split in half, and then the promissory notes be applied as a set-off.  In that scenario, the escrowed $1,003,799.11 would be split such that $501,899.55 would immediately go to the defendants, and then the $501,899.55 due to the plaintiffs would be applied against the present value of the promissory notes as set out in

the Pennsylvania judgments (which exceeds $501,899.55).[3]  In this scenario, the defendants would take the entirety of the escrowed funds and the plaintiffs would still owe the defendants the balance of the two outstanding judgments.

In determining whether to adopt the plaintiffs' or defendants' methodology, and because the decision is essentially an equitable one with little in the way of controlling precedent, this court has reviewed many analogous legal and equitable principles to conclude that the defendants' proposed methodology should apply here.  The most compelling consideration is the equitable principle of setoff (or recoupment)[4], which would work to apply the money separately owed to the defendants by virtue of the promissory notes to the money that would otherwise be awarded to the plaintiffs:

> A court has inherent equitable power to allow or compel a setoff whenever equity and justice so demand.  The right of setoff itself is essentially an equitable right, which courts may enforce at their discretion. Given the equitable nature of setoff, in permitting a setoff, the court may calculate the setoff in the way it deems most equitable.

---

[3] This is true even after deducting the amount of the one judgment that John Arena has already satisfied.  *See* (Dkt. No. 98-A; Dkt. No. 98-B).

[4] The common law sometimes distinguishes between setoff and recoupment, the former dealing with debts unrelated to the complaint and the latter dealing with those related to the transactions or occurrences in the complaint.  *See, e.g., United Structures of Am., Inc. v. G.R.G. Eng'g, S.E.*, 9 F.3d 996, 998 (1st Cir. 1993).  Because both are equitable remedies that would allow the court to apply the debt owed against the division of the escrowed funds, this opinion only discusses setoff for simplicity.

20 Am. Jur. 2d Counterclaim, Recoupment, Etc. § 11 (2022) (internal citations omitted).

Courts sometimes use setoffs of countervailing damages when finalizing awards in cases like the present one where there are counterclaims.  Such application of the setoff power is well established within the decisions of this court as well as the SJC. *See, e.g., Merigan v. Liberty Life Assur. Co. of Bos.*, 839 F. Supp. 2d 445, 448 (D. Mass. 2012) (internal quotations omitted) ("The right of setoff . . . allows parties that owe each other money to apply their mutual debts against each other thereby avoiding the absurdity of making A pay B when B owes A."); *Mass. Motor Vehicle Reinsurance Facility v. Comm'r of Ins.,* 400 N.E.2d 221, 227 (Mass. 1980) (quoting *Perry v. Pye*, 102 N.E. 653, 657 (Mass. 1913)) ("In the absence of a statute, there is power in equity to 'compel a set-off of cross demands or of judgments . . . whenever necessary for the proper administration of justice.'").  Setoffs are appropriate when they are "likely to anticipate and resolve more contingencies and leave less possibility of uncertainty about what the judgment means." *Sign-A-Way, Inc. v. Mechtronics Corp.*, 12 F. Supp. 2d 132, 161 (D. Mass. 1998), *rev'd in part on other grounds*, 232 F.3d 911 (Fed. Cir. 2000)).  This rationale is particularly forceful here where this case has suffered a lengthy litigation process with much uncertainty over several years.

The only salient argument that the plaintiffs make for *not* applying the notes as a setoff against their half of the proceeds, is that the court

> should strongly consider the context in which defendant Driscoll secured the judgments in the Pennsylvania state [c]ourt . . . and the court ought to value the amount of those judgments as merely the artifice of the ex-parte process and strike so much of those two[] (2) judgments that reflect[] accrued interest.  The basis for this is quite simply the principles of equity and the expectations of the parties when they entered into the partnership . . . .

(Dkt. No. 95, p. 15).  The plaintiffs' appeal to the equitable nature of their claim is well taken, but because this court must respect the Pennsylvania judgments, the plaintiffs' proposed distribution cannot be endorsed.  The plaintiffs should have raised any arguments about the parties' expectations or any fraud, duress, or other infirmity with the promissory notes in the Pennsylvania litigation.  Further, the promissory notes themselves specifically reference the lender's right of setoff against the borrower.  *See* (Dkt. No. 98-K; Dkt. No. 98-L; Dkt. No. 98-M) ("Upon the occurrence of a default, the Lender shall have all the rights and remedies . . . including the right of set-off against any and all accounts, which right of set-off shall be in addition to and not in derogation of any right of set-off the Lender may otherwise have by reason of law or agreement.").  Accordingly, the court will set off the plaintiffs' 50% share of the property's sale proceeds ($501,899.55) with their promissory note debts due to Defendants

11

($674,385.20)[5], in accordance with the defendants' proposed distribution of the escrowed funds.

## IV. <u>CONCLUSION</u>

For the reasons set forth above, the court recognizes the equal ownership interests in the property by the parties as well as the validity of the judgments secured by the defendants in Pennsylvania. As such, the court orders that the funds held in escrow by the court be disbursed to the defendants as proposed in Defendants' Motion for Summary Judgment, Simultaneous Execution on and Remittance of Escrowed Funds (Dkt. No. 96), which is ALLOWED.


<u>So Ordered</u>.                          /s/ Donald L. Cabell
                                   DONALD L. CABELL, U.S.M.J.

DATED:  November 25, 2022

---

[5] This amount is exclusive of any post-judgment interest that may have accrued.